126438-5

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS JAVIER CORDERO, on behalf of himself and others similarly situated,

Plaintiff,

vs.

DIRECT FUNDING NOW LLC,

Defendant.
_______________________/

CASE NO. 8:26-cv-00121-MSS-AEP

# DIRECT FUNDING NOW, LLC'S MOTION TO DISMISS

Defendant Direct Funding Now, LLC ("DFN"), by its undersigned counsel, hereby moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and for dismissal of Count II of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## MEMORANDUM OF LAW

### I. The Court Does Not Have Personal Jurisdiction Over DFN.

This putative class action stems from two alleged telephone calls made to Plaintiff, Douglas Cordero, regarding commercial/business loan opportunities. Defendant DFN did not initiate these phone calls, and the Complaint makes no allegations as to a principal/agent relationship with whoever made those calls to the Plaintiff. Accordingly, the Complaint is due to be dismissed for lack of personal jurisdiction over DFN.

**a. Plaintiff Bears the Burden of Demonstrating Personal Jurisdiction.**

Personal jurisdiction "is an essential element of the jurisdiction of [a] district court [], without which the court is powerless to proceed to an adjudication." *Ruhrgas v. Marathon*, 526 U.S. 574, 584 (1999). Before a court may take any other action, it must first determine whether it can exercise personal jurisdiction over a defendant. *Posner v. Exxex*, 178 F.3d 1209, 1214 fn. 6 (11th Cir. 1999). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant challenges jurisdiction by submitting evidence in support of its position, the burden shifts back to the plaintiff to produce evidence that supports jurisdiction. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). At that point, the plaintiff is required to substantiate its jurisdictional allegations by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint. *Polskie v. Seasafe,* 795 F.2d 968, 972 (11th Cir. 1986).

**b. Due Process and the Long Arm Statute**

"A federal court sitting in diversity undertakes a two-step inquiry to determine whether personal jurisdiction exists. First, the exercise of jurisdiction must be appropriate under the forum state's long-arm statute, which delimits the exercise of personal jurisdiction under state law. Second, the exercise of jurisdiction must comport

with the Due Process Clause of the Fourteenth Amendment." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citations omitted).

"Florida's long-arm statute provides two ways in which a defendant may be subject to the jurisdiction of the state's courts. First, a defendant is subject to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—for conduct specifically enumerated in the statute. Second, a defendant is subject to general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida." *Id.* (citations and quotation marks omitted).

Because general jurisdiction is based upon activity unrelated to a particular cause of action, the due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). Under this more exacting standard, due process requires that a defendant's affiliations with the forum be so "continuous and systematic" as to render it "essentially at home" in that state. *Daimler AG*, 571 U.S. at 119. "[I]t is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Smith-Russo v. NCL (Bah.) Ltd.*, 2017 WL 5565613, at *4 (S.D. Fla. July 26, 2017).

As for specific personal jurisdiction, there must be a "direct affiliation, nexus, or substantial connection" between a plaintiff's cause of action and the defendant's

activity to establish personal jurisdiction. *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 550 (11th Cir. 2019).

**c. Background Facts**

Exhibit 1 is a declaration of Dominique Murillo. Ms. Murillo is Operations Manager of DFN, a California limited liability company. The following facts are pertinent to the jurisdictional inquiry:

1. DFN is a California limited liability company whose principal place of business is in Irvine, California.
2. DFN operates no offices or facilities in Florida.
3. DFN does not own any property in Florida.
4. DFN has no employees working in a Florida location.
5. DFN has not insured a person, property, or risk located in Florida.
6. DFN has not breached any contract in Florida by failing to perform acts required by the contract to be performed in Florida.
7. DFN operates in the business-to-business space, and so it works with marketing sources that target businesses or business owners in their professional capacity.
8. To the best of DFN's knowledge, DFN did not initiate the phone calls referenced in paragraphs 29 and 31 of the Plaintiff's Complaint, and DFN only has knowledge of the second call because the Plaintiff expressed interest in the services at issue during that second call, such that it was transferred to DFN.

9. DFN works with third-party marketers who generate leads, but DFN does not direct or control how those marketers obtain the leads, nor how they obtain the contact information for those leads.
10. DFN does not direct any third-party entity to call any specific entities or individuals.
11. DFN does not supply lists of phone numbers to third-party marketers.
12. DFN does not authorize any third-party marketing entity with which it works to enter into agreements on DFN's behalf, including as to Plaintiff.
13. If a call between DFN (as opposed to a call with a third-party marketer) and a potential customer is recorded, it is recorded by a third-party vendor, and DFN is not aware where those calls are physically recorded.
14. Ex. 1, at 3-15.

**d. No general jurisdiction.**

The Eleventh Circuit has explained that general jurisdiction is appropriate over nonresident corporate defendants only if "the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Management, Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015). Plaintiff cannot make a reasonable argument that any state other than California is DFN's principal place of business. Plaintiff has pled nothing to suggest that DFN somehow targets Florida customers on a regular basis, nor that there is any other basis over which the court could exercise general personal

jurisdiction. Accordingly, the court does not have general personal jurisdiction over DFN.

**e. No specific personal jurisdiction.**

Plaintiff alleges jurisdiction based on the fact that DFN purportedly made telemarketing calls into the Middle District. Doc. 1, p. 4. Florida's long-arm statute has a handful of possible avenues for Plaintiff to rely on to establish jurisdiction, but none of them can be successful as the allegations are pled:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state. . . .

Fla. Stat. § 48.193(1)(a)(1), (2), (6).

The Murillo Declaration refutes the allegations that: (1) Defendants operate, conduct, engage in, or carry on a business or business venture in Florida, and that (2) Defendants committed any tortious act in Florida. As discussed above, DFN did not operate or conduct business in Florida, nor did it commit a tortious act in Florida. The Murillo Declaration refutes the allegation that DFN placed any phone calls to the Plaintiff at all, and the Complaint makes no allegations whatsoever as to any agency relationship between DFN and whoever made the alleged calls. Even though "Florida's long-arm statute is satisfied as to a TCPA claim that arises from a non-

resident defendant making a telephonic communication into Florida," *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016), here, the allegation that DFN made the calls at issue is refuted by competent evidence.

This analysis would apply with equal force to as to Plaintiff's FTSA claim (Count II). And as for his claim under the Florida Security of Communications Act, Plaintiff makes no allegations as to the recording of any call actually taking place in Florida, rendering the long arm statute inapplicable. *Kountze v. Kountze*, 996 So. 2d 246, 252 (Fla. 2d DCA 2008) ("we are not convinced that the isolated act of recording a telephone call in another state in violation of a Florida statute is enough to constitute a 'tortious act within this state' for purposes of the long-arm statute."); *see also* Exh. 1, ¶ 15.

To the extent that Plaintiff attempts to argue that whoever placed the phone calls to Plaintiff was somehow DFN's agent, thereby conferring personal jurisdiction over DFN, that argument is unavailing given that the Murillo Declaration refutes that there is an agency relationship between the entity that placed the alleged calls to Plaintiff and DFN. DFN simply does not exercise the level of control over third-party marketers required to support an agency relationship. *See* Exh. 1; *see also Strauss v. CBE Group, Inc.,* 173 F. Supp. 3d 1302, 1310 (S.D. Fla. 2016) (no agency relationship in TCPA action between firm and telemarketer because of lack of substantial control over agent's actions and no evidence that firm "gave [telemarketer] access to its systems, authorized [telemarketer] to use its name or marks, or knew that [telemarketer] was

violating the TCPA and failed to stop it"); *Cabrera v. Gov't Employees Ins. Co.,* 452 F. Supp. 3d 1305, 1317 (S.D. Fla. 2014) ("principal must have the right to control the manner and method of work carried out by the agent, and the agent must be able to affect the legal relationships of the principal.") (quote marks omitted).

In any event, there are no allegations in the operative complaint as to any agency relationship whatsoever, including as to who any purported agent might be, and accordingly, personal jurisdiction is lacking, and the complaint should be dismissed.

**f. No due process.**

Even if the Court could find that specific personal jurisdiction would be appropriate under Florida's long arm statute, the Court should nonetheless dismiss the claims against DFN for want of jurisdiction for a failure to comport with principles of due process. *See, e.g., Honus Wagner Co. v. Luminary Grp. LLC*, No. 17-CV-61317, 2017 WL 6547899, at *9 (S.D. Fla. Dec. 21, 2017) (finding the long arm statute satisfied, but dismissing the case under Due Process principles).

The Constitution prohibits personal jurisdiction over a nonresident unless its contacts with the state are such that it has "fair warning" or could have "reasonably anticipated" that it may be subject to suit there. *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008). "This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' [its] activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.*, 544 F.3d at

1284. The Eleventh Circuit applies a three-part due process test that "examines: (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

**1. Relatedness.**

A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009). The inquiry must focus on the direct causal relationship between the defendant, the forum, and the litigation. *Id.*

As discussed above, the claims cannot be related to DFN's contacts with Florida because DFN did not initiate the relevant contacts, and there are no allegations in the Complaint about an agency relationship between whoever did initiate the contacts and Plaintiff. There is therefore no causal relationship based on the Defendant's actions, and the relatedness prong is not satisfied.

**2. Purposeful Availment.**

There are two applicable tests to determine whether a defendant has "purposefully availed" himself to the forum state: the "effects test" and the traditional

"minimum contacts" test. *Keim v. ADF MidAtlantic, LLC,* 199 F. Supp. 3d 1362, 1369-70 (S.D. Fla. 2016). Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment even if a defendant does not have any additional contacts with the forum state. *See Licciardello*, 544 F.3d at 1285. This occurs when the tort was: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (citations omitted).

As for the traditional minimum contacts test, a court asks whether the defendant's contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).

Neither test supports jurisdiction. The effects test fails since (1) DFN did not intend to call Plaintiff (Exh. 1, ¶¶ 10-14); (2) DFN did nothing to aim their conduct at the forum state (*Id.*); or (3) caused harm that they should have anticipated would be suffered in the forum state. Under the minimum contacts test: (1) there are no allegations that DFN has contacts with Florida outside of the alleged phone calls here, which it did not initiate; (2) there is a dearth of evidence that defendants purposefully availed themselves of the privileges of doing business in Florida; and (3) there is no reason defendants should have anticipated being haled into court in Florida. *Id.*

### 3. Fair Play and Substantial Justice.

Under the third prong, once Plaintiff has satisfied its burden under the first two prongs, Defendants bear the burden of establishing that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *See Louis Vuitton*, 736 F.3d at 1355. This inquiry requires consideration of: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the [interstate] judicial system's interest in resolving the dispute." *Mighty Men*, 102 F. Supp. 3d at 1275. "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477-78. Defendant is located in California, and would be burdened by defending an action in Florida, across the country from its home base. And Plaintiff has not pled any facts to suggest that this forum has any interest in adjudicating this dispute. Especially where a defendant has no real contacts with the forum state, as is the case here, forcing DFN to defend this case here would offend notions of fair play and substantial justice. *Umbach v. Mercator Momentum Fund, L.P.,* No. 07-22219-CIV, 2007 WL 2915910, at *7 (S.D. Fla. Oct. 5, 2007) (where "minimum contacts were not established," plaintiff cannot rely as heavily on his interest to justify burden on defendants). Plaintiff has not satisfied this element, either.

## II. Plaintiff's FTSA Claim Should Be Dismissed.

Count II of the Plaintiff's Complaint is based on F.S. § 501.059, the Florida Telephone Solicitation Act (FTSA). This Count fails to state a cause of action because the Complaint alleges that the solicitation at issue was not for a consumer product, and so it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting in part Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) (*citations and quote marks omitted*). "A pleading is insufficient if it offers mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Twombly*, 550 U.S. 544, 555. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Davis v. Self*, 547 F. App'x 927, 929 (11th Cir. 2013) (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (quotation marks omitted).

Plaintiff alleges that DFN made a telephonic sales call to him in violation of the FTSA. However, the FTSA is directed towards communications directed towards the sale of consumer goods or services.

> The FTSA defines "telephonic sales call" in relevant part as a telephone call "to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Id. § 501.059(1)(j). "Consumer goods or services," in turn, is defined as:
>
> > real property or tangible or intangible personal property that is normally used for personal, family, or household purposes, including, but not limited to, any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed, as well as cemetery lots and timeshare estates, and any services related to such property.
> > *Id.* § 501.059(1)(c).

*Brown v. Care Front Funding*, No. 8:22-CV-2408-VMC-JSS, 2023 WL 3098355, at *4 (M.D. Fla. Apr. 6, 2023), *report and recommendation adopted*, No. 8:22-CV-2408-VMC-JSS, 2023 WL 3092617 (M.D. Fla. Apr. 26, 2023). Plaintiff acknowledges in his Complaint that the services being offered by DFN are not consumer in nature, but for businesses. Paragraph 32 of the Complaint includes a screenshot of an email purportedly from Defendant that makes this clear: the first line of the email is: "Unlock up to $5 million in available funds and **get your business ready for success.**" Doc. 1, p. 7 (emphasis added).

This allegation is similar to those analyzed in *Brown*, at *4-5, where in the context of entering a default judgment, the court denied entry of a judgment on an FTSA claim where the plaintiff's Complaint included an email from the defendants after the calls

related to business financing. The court found it could not enter a judgment where the Complaint failed to state a claim, and accordingly, this analysis is applicable here. The FTSA simply "does not apply to telephone calls made for the purpose of soliciting a sale of or extending a line of credit for goods or services that are not normally used for personal, family, or household purposes." *Id.* at *4 (quotation marks and citations omitted). Because the Complaint in this case clearly alleges that the financing being offered is for a business purpose, not a consumer purpose, the Plaintiff's FTSA claim should be dismissed. And because the Plaintiff's Complaint makes no allegation that DFN offers anything but business loan services, this dismissal should extend to the class allegations as well.

**Local Rule 3.01(g) Certification**

The undersigned certifies that he conferred with counsel for the Plaintiff, Avi Kaufman, via email on March 16, 2026. Plaintiff opposes the requested relief.

March 16, 2026 Respectfully submitted,

/s/ Peter Bartoszek
Peter Bartoszek (1015519)
PBartoszek@wickersmith.com
WICKER SMITH O'HARA
McCOY & FORD, P.A.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Telephone: (407) 843-3939
Facsimile: (407) 649-8118
*Attorneys for Direct Funding Now LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on March 16, 2026, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Peter Bartoszek*
Peter Bartoszek, Esquire

## SERVICE LIST

Avi R. Kaufman, Esquire
Kaufman, P.A.
237 S Dixie Highway Ste 455
Coral Gables, FL 33133-4824
(305) 469-5881
kaufman@kaufmanpa.com